**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ENVIRO TECH CHEMICAL
SERVICES, INC.**                                                           **PLAINTIFF**

**v.**                              **Case No. 4:21-cv-00601-LPR**

**SAFE FOODS CORPORATION**                                       **DEFENDANT**

**<u>ORDER</u>**

This is a patent-infringement case.  Plaintiff Enviro Tech Chemical Services, Inc. is the owner of a Patent for a method of preparing poultry for distribution and sale ("the Patent").  On July 2, 2021, Enviro Tech filed a Complaint asserting that Defendant Safe Foods Corporation infringed on the Patent. [1]   On November 15, 2021, Enviro Tech filed its Infringement Contentions.[2]   In the Infringement Contentions, Enviro Tech asserted that Safe Foods infringed on all of the Patent's claims except for claims 4, 13, 20, 25, and 30.[3]   Throughout the claim construction process, Enviro Tech's Infringement Contentions remained the same.

On December 15, 2022, the Court issued a Claim Construction Order.[4]   Both parties agree that the Claim Construction Order requires judgment in favor of Safe Foods with respect to all of Patent claims challenged in Enviro Tech's Infringement Contentions.[5]   When the Court asked the parties to propose the proper disposition of the case, Enviro Tech argued that the Court should enter judgment in favor of Safe Foods with respect to all of the Patent's claims, including the five

---

[1]  Compl. (Doc. 1).

[2]  Infringement Contentions (Doc. 35).

[3]  Infringement Contentions (Doc. 35) at 2.

[4]  Claim Construction Order (Doc. 82).

[5]  Def.'s Submission Regarding Case Disposition (Doc. 83) at 2; Pl.'s Status Update (Doc. 84) at 1.

claims that that were not a part of the Infringement Contentions.[6]  And, on March 23, 2023, after

the Court asked both parties for briefing regarding the scope of the judgment, Enviro Tech moved

for leave to supplement its Infringement Contentions (in an attempt to add challenges to Patent

claims 4, 13, 20, 25, and 30) as part of its Scope of Judgment Brief.[7]  Enviro Tech argues that it

does not need good cause to supplement its Infringement Contentions.[8]  Alternatively, even if

Enviro Tech does need good cause, Enviro Tech argues that it has good cause to amend its

Infringement Contentions.[9]

But the Court concludes, in light of the First Amended Scheduling Order, that

Enviro Tech's last-second attempt to supplement its Infringement Contentions requires good cause

and that Enviro Tech has failed to show such good cause.   The Court thus DENIES Enviro Tech's

Motion for Leave to Supplement its Infringement Contentions.[10]  Accordingly, Final Judgment

will be entered in favor of Safe Foods with respect to all of the Patent claims challenged in Enviro

Tech's November 15, 2021 Infringement Contentions.   Because Patent claims 4, 13, 20, 25, and

30 were not part of those Infringement Contentions, they are not at issue in this case.[11]

---

[6] Pl.'s Status Update (Doc. 84) at 2–3.

[7] Pl.'s Scope of J. Br. (Doc. 90) at 11.

[8] Id. at 3–9.  At various points in this Order, the Court uses the words "amend" and "supplement" to describe what Enviro Tech wants to do with respect to its Infringement Contentions.   For purposes of this Order, those two words should be read synonymously.

[9] Id. at 11.

[10] Pl.'s Scope of J. Br. (Doc. 90).

[11] To the extent those five Patent claims can be thought of as "at issue" in this case, they were not timely challenged by Enviro Tech in the Infringement Contentions.   Accordingly, Safe Foods would be entitled to judgment in its favor with respect to any legal claim asserted by Enviro Tech concerning them.

## I. BACKGROUND FACTS

The Patent contains thirty-three claims.[12]   Of those claims, five are "independent claims" and twenty-eight are "dependent claims."   "An independent claim is self-contained and complete unto itself.   It is a full and complete description of an operative invention."[13]   A dependent claim adds a new limitation to an independent claim.[14]   Below are claims 1–9.   These provide a helpful illustration of (a) the relationship between independent and dependent claims, and (b) the parties' disagreements in this case.   Claim 1 is an independent claim.   Claims 2–9 are dependent claims of Claim 1.   The parties agree that Claim 1 is representative.[15]

> **1.**   A method of treating at least a portion of a poultry carcass with peracetic acid, said method comprising the steps of:
>
> > providing, in a reservoir, a peracetic acid-containing water, wherein the peracetic acid-containing water comprises water and an antimicrobial amount of a solution of peracetic acid;
> >
> > after the step of providing the peracetic acid-containing water, determining the pH of the peracetic acid-containing water, and altering the pH of the peracetic acid-containing water to a pH of about 7.6 to about 10 by adding an alkaline source;
> >
> > after the step of determining the pH and altering the pH of the peracetic acid-containing water, placing into the peracetic acid-containing water at least a portion of a poultry carcass;
> >
> > after the step of placing at least the portion of the poultry carcass into the peracetic acid-containing water, determining the pH of the peracetic acid-containing water in the reservoir with at least the portion of the poultry carcass therein, and altering the pH of the peracetic acid-containing water to a pH of about 7.6 to about 10 by adding an alkaline source; and

---

[12] Patent, col. 61 1. 30–col. 65 1. 20.

[13] *Mynette Techs., Inc. v. United States*, 139 Fed. Cl. 336, 349 n.16 (2018) (emphasis omitted and alteration adopted) (quoting Amy L. Landers, *Understanding Patent Law* § 4.04[A] (2d ed. 2012)).

[14] *Id.* (quoting Landers, *Understanding Patent Law* § 4.04[A]).

[15] *See* Pl.'s Claim Construction Br. (Doc. 40) at 2; Def.'s Claim Construction Br. (Doc. 41) at 6.

after the step of determining the pH and altering the pH of the peracetic acid-containing water having at least the portion of the poultry carcass therein, removing at least the portion of the poultry carcass from the peracetic acid-containing water.

2.      The method of claim **1** where in the providing step includes a step of separately introducing the water and the antimicrobial amount of the solution of peracetic acid into the reservoir to form the peracetic acid-containing water provided in the reservoir.

3.      The method of claim **1** wherein the providing step includes a step of combining the water and the antimicrobial amount of the solution of peracetic acid to form the peracetic acid-containing water and a subsequent step of introducing the peracetic acid-containing water into the reservoir for providing, in the reservoir, the peracetic acid-containing water.

4.      The method of claim **1** wherein the antimicrobial amount of the peracetic acid is about 1 ppm to about 99 ppm.

5.      The method of claim **1** wherein the steps of determining the pH of the peracetic acid-containing water are performed continuously.

6.      The method of claim **5** wherein the step of altering the pH after the step of placing at least the portion of the poultry carcass into the peracetic acid-containing water is performed continuously.

7.      The method of claim **2** further comprising a step of removing a portion of the peracetic acid-containing water from the reservoir with at least the portion of the poultry carcass therein, and a further step of introducing additional water and additional solution of peracetic acid into the reservoir with at least the portion of the poultry carcass therein.

8.      The method of claim **3** further comprising a step of removing a portion of the peracetic acid-containing water from the reservoir with at least the portion of the poultry carcass therein, and a further step of introducing additional peracetic acid-containing water into the reservoir with at least the portion of the poultry carcass therein.

9.      The method of claim **1** wherein the step of determining the pH and altering the pH after the step of placing at least the portion of the poultry carcass into the peracetic acid-containing water is performed more than once.[16]

---

[16] Patent, col. 61 1. 31–col. 62 1. 30.   There is an errant period in step two of Claim 1.   The Court believes this to clearly be a scrivener's error and therefore omitted the period from the quotation.

To kick off the claim construction process, the Court's First Amended Scheduling Order required Enviro Tech to file Infringement Contentions by November 15, 2021. [17]   In the Infringement Contentions, Enviro Tech was required to list "each patent claim that is allegedly infringed by each opposing party."[18]   Enviro Tech timely filed such contentions on the day of the deadline.[19]   The Infringement Contentions alleged that Safe Foods infringed on twenty-eight of the Patent's thirty-three claims.[20]   Enviro Tech did not include claims 4, 13, 20, 25, and 30 in its infringement contentions.[21]   Each of the excluded claims reads, in part, as follows: "wherein the antimicrobial amount of the peracetic acid is about 1 ppm to about 99 ppm."[22]   Enviro Tech purported to "reserve[] the right to later assert infringement as to [the excluded claims] should evidence be discovered to support a contention that Safe Foods and/or its customers also have infringed [the excluded claims]."[23]   But the First Amended Scheduling Order did not include any reference to supplementation of infringement contentions.[24]

---

[17] First Am. Scheduling Order (Doc. 33) at 1–2.

[18] *Id.* at 1.

[19] Infringement Contentions (Doc. 35).

[20] *Id.*

[21] *Id.* at 2.

[22] Patent, col. 61 1. 31–co. 62 1. 30.   Claims 4, 13, 20, 25, and 30 are identical except that each of these dependent claims refer to a different independent claim.

[23] Infringement Contentions (Doc. 35) at 2.

[24] First Am. Scheduling Order (Doc. 33).   Under the Scheduling Order, the next deadline was for Safe Foods: to file and serve Invalidity Contentions by December 31, 2021.   First Am. Scheduling Order (Doc. 33) at 2.   As part of the invalidity contentions, Safe Foods was required "[f]or any grounds of invalidity" to "provide its reasons and evidence why the claims are invalid."   *Id.*   Safe Foods did not file any Invalidity Contentions with the Court, but Safe Foods did serve Invalidity Contentions to Enviro Tech on December 30, 2021.   Pl.'s Scope of J. Br. (Doc. 90) at 6–8; Ex. D (Def.'s Invalidity Contentions) to Pl.'s Scope of J. Br. (Doc 90).   The Invalidity Contentions asserted that the term "antimicrobial amount," as used in the Patent claims, was indefinite.   Ex. D (Def.'s Invalidity Contentions) to Pl.'s Scope of J. Br. (Doc 90) at 39–47.   The contentions did not contain any assertion that the term "about" was indefinite.

Enviro Tech supplemented its Infringement Contentions on January 12, 2022.   Ex. 4 (January 12, 2022 Suppl. Infringement Contentions) to Def.'s Submission Regarding Case Disposition (Doc. 83-4); Pl.'s Scope of J. Br. (Doc.

On January 28, 2022, Safe Foods produced to Enviro Tech documents that indicated the concentration of peracetic acid used by one of Safe Food's ten identified customers.[25]  These are the documents upon which Enviro Tech eventually based the proposed amended Infringement Contentions at issue in the instant Order.[26]   But that didn't occur until eleven months later, after both the Claim Construction hearing and the Court's Claim Construction Order.   Enviro Tech did not propose any amendments to the Infringement Contentions in those eleven months.

On January 31, 2022, pursuant to the Scheduling Order, the parties initially identified disputed claim terms.[27]   The Court extended by thirty days the deadline to exchange proposed interpretations and the deadline to come to a final identification of the disputed claim terms.[28]   On April 4, 2022, each party filed their own Claim Construction Brief.[29]   In its Claim Construction Brief, Safe Foods argued that both "antimicrobial amount" and "about" were indefinite terms.[30] The parties filed Response Briefs on May 4, 2022, and Safe Foods filed a Reply Brief on May 27, 2022.[31]

On October 4, 2022, the Court held a Claim Construction hearing.[32]   While waiting for the Court to issue the Claim Construction Order, the parties jointly moved to amend the Scheduling

---

91) at 3.   But these supplemental Infringement Contentions were never filed with the Court.   These supplemental Infringement Contentions also exclude Patent claims 4, 13, 20, 25, and 30.   *Id.*

[25]  Pl.'s Scope of J. Br. (Doc. 90) at 3.

[26]  *Id.* at 11.

[27]  Def.'s Scope of J. Br. (Doc. 91) at 3.

[28]  Order Granting in Part and Den. in Part Mot. to Am. First Am. Scheduling Order (Doc. 39).

[29]  Pl.'s Claim Construction Br. (Doc. 40); Def.'s Claim Construction Br. (Doc. 41).

[30]  Def.'s Claim Construction Br. (Doc. 41) at 24–55.

[31]  Pl.'s Resp. to Def.'s Claim Construction Br. (Doc. 46); Def.'s Resp. to Pl.'s Claim Construction Br. (Doc. 47); Def.'s Reply in Supp. of its Claim Construction Br. (Doc. 52).

[32]  Claim Construction Hr'g (Doc. 70).

Order.[33]   On December 7, 2022, the Court granted the motion and issued a Second Amended Scheduling Order.[34]   As requested by the parties, the Second Amended Scheduling Order set new discovery and motions deadlines.[35]   But the Second Amended Scheduling Order did not set a new deadline for Infringement Contentions or a deadline to supplement Infringement Contentions.[36] No party asked for such changes.[37]

On December 15, 2022, the Court issued the Claim Construction Order.[38]   The Court held that the terms "antimicrobial amount" and "about" as used in the Patent claims were indefinite.[39] As part of the Claim Construction Order, the Court directed the parties to submit briefs proposing the proper procedural disposition of the case.[40]   On December 28, 2022, Enviro Tech served Safe Foods with Supplemental Initial Infringement Contentions.[41]   These supplemental contentions added the Patent claims originally excluded from the Infringement Contentions (claims 4, 13, 20, 25, and 30).[42]   The next day, the parties submitted their proposals regarding the proper disposition of the case.[43]   Because all claims asserted in the original Infringement Contentions relied on the terms "antimicrobial amount" and "about," the parties agreed that a Final Judgment in favor of the

---

[33]   Joint Mot. to Am. Scheduling Order (Doc. 79).

[34]   Order Granting Joint Mot. to Am. Scheduling Order (Doc. 80); Second Am. Scheduling Order (Doc. 81).

[35]   Second Am. Scheduling Order (Doc. 81) at 1–2.

[36]   *Id.*

[37]   *See* Joint Mot. to Am. Scheduling Order (Doc. 79).

[38]   Claim Construction Order (Doc. 82).

[39]   *Id.* at 22–32.

[40]   *Id.*   at 32.

[41]   *See* Def.'s Scope of J. Br. (Doc. 91) at 4; Ex. 5 (Suppl. Infringement Contentions) to Def.'s Scope of J. Br. (Doc. 91-5).

[42]   Ex. 5 (Suppl. Infringement Contentions) to Def.'s Scope of J. Br. (Doc. 91-5) at 2–3.

[43]   Def.'s Submission Regarding Case Disposition (Doc. 83); Pl.'s Status Update (Doc. 84).

defendant was appropriate.[44]   But the parties disagreed as to the scope of the Judgment.   Enviro

Tech argued that the Judgment should apply to all Patent claims, including the claims that were

newly added in the supplemental Infringement Contentions.[45]   Safe Foods, on the other hand,

argued that the Judgment should only reach those claims contained in the original Infringement

Contentions.[46]

Following the issuance of the Claim Construction Order, the parties engaged in settlement

discussions.   As such, the parties jointly emailed the Court asking the Court to delay entry of a

Final Judgement.[47]   The Court agreed.   But it instructed the parties the submit briefing on the

proper scope of any Judgment.[48]   On March 23, 2023, the parties submitted the requested

briefing.[49]   In its brief, Enviro Tech argues that (1) because the First Amended Scheduling Order

did not contain a deadline for amending Infringement Contentions, Enviro Tech did not need leave

to amend its Infringement Contentions, and (2) even if it did need leave to amend the Infringement

Contentions, Enviro Tech had good cause to amend the Infringement Contentions[50]   Accordingly,

Enviro Tech asserts that the Court should enter a Final Judgment holding that all Patent claims,

including those not asserted in the original Infringement Contentions, are indefinite and therefore

invalid.   Safe Foods's counter-argument is similarly straight-forward.   It says: (1) The deadline

---

[44] Def.'s Submission Regarding Case Disposition (Doc. 83) at 2; Pl.'s Status Update (Doc. 84) at 1.

[45] Pl.'s Status Update (Doc. 84) at 2–3.

[46] Def.'s Submission Regarding Case Disposition (Doc. 83) at 3–5.

[47] Ex. 17 (Email Requesting Delay of Entry of Final J.) to Mot. for Leave to File Am. Answer (Doc. 88-17).

[48] Order Requesting Briefing on Scope of J. (Doc. 85).

[49] Pl.'s Scope of J. Br. (Doc. 90); Def.'s Scope of J. Br. (Doc 91).

[50] *See generally* Pl.'s Scope of J. Br. (Doc. 90).   Enviro Tech asks the Court to treat its Brief as a Motion for Leave to Amend the Infringement Contentions should the Court find that Enviro Tech needs to seek such leave.   *See id.* at 11.

to serve and file infringement contentions passed more than thirteen months before Enviro Tech served its supplemental Infringement Contentions; (2) Enviro Tech thus needed leave to amend the Infringement Contentions and had to show good cause; (3) Enviro Tech did not show good cause to amend the Infringement Contentions; (4) Enviro Tech therefore should not be permitted to supplement its Infringement Contentions; and (5) because Enviro Tech should not be permitted to supplement the Infringement Contentions, the Court should enter a Final Judgment holding that only the claims in the original Infringement Contentions are indefinite and invalid.[51]

## II. LEGAL ANALYSIS

### A. *Enviro Tech Needs to Show Good Cause to Amend Infringement Contentions*

The first question the Court must address is whether Enviro Tech needed to seek leave to amend its Infringement Contentions and to show good cause.   Enviro Tech points out that nothing in the First Amended Scheduling Order requires it to seek leave before supplementing Infringement Contentions.[52]   Nor does the Scheduling Order set a deadline to supplement Infringement Contentions.[53]   Enviro Tech cites patent rules from other districts and scheduling orders from previous Eastern District of Arkansas cases to show that courts often allow plaintiffs to amend infringement contentions without leave up to a month after the issuance of a claim construction order.[54]   According to Enviro Tech, the absence of such instructions in this case's Scheduling Order expands, rather than narrows, the parties' right to supplement Infringement and

---

[51] *See generally* Def.'s Scope of J. Br. (Doc 91).

[52] Pl.'s Scope of J. Br. (Doc. 90) at 4–5.

[53] *Id.* at 5.

[54] *Id.* at 4–5.

Invalidity Contentions.[55]   To require Enviro Tech to seek leave to amend Infringement Contentions or to invent a deadline for amending Infringement Contentions that did not exist in the Scheduling Order would fail to give Enviro Tech "actual notice" under Federal Rule of Civil Procedure 83(b).[56]   Accordingly, Enviro Tech should not face sanctions for failing to meet a deadline it didn't know existed.

Enviro Tech is mistaken.   The Scheduling Order is clear that November 15, 2021, was the deadline to file and serve Infringement Contentions.[57]   In a letter to the parties, the Court explicitly stated that that the "Scheduling Order . . . contains mandates[,] not suggestions."[58]   The fact that the Scheduling Order doesn't mention amendments to Infringement or Invalidity Contentions suggests exactly the opposite of what Enviro Tech argues.   Enviro Tech has not pointed to a legal source—e.g., the Constitution, federal law, federal rules, local rules, standing Orders, or Scheduling Orders—that provide the right to amend Infringement Contentions.[59]   Typically, the proper procedure, when these sources are silent as to whether a party can take a particular action, is to seek leave from the Court to perform such an action.   If there is good cause for the party take such an action, then the Court will grant the motion for leave.   Accordingly, in this case, the Scheduling Order's silence suggests that Enviro Tech needed to seek leave to supplement its Infringement Contentions and that such leave would only be granted for good cause.

---

[55] *Id.* at 5.

[56] *See id.* at 5–6.

[57] First Am. Scheduling Order (Doc. 33) at 1–2.

[58] *Id.* at 6.

[59] Compare this to the right to amend pleadings, which can be found in Rule 15 of the Federal Rules of Civil Procedure.

As support for its position, Enviro Tech points to customary practice in other districts.[60] But those district courts are not uniform in the way that they approach amendments to infringement contentions.   For example, the scheduling orders that Enviro Tech points to from the Eastern District of Arkansas all require the parties to supplement Infringement Contentions in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.[61]   The Eastern District of Texas requires, except in limited circumstances, that parties seek leave to amend the Infringement Contentions and to show good cause.[62]   And the Court of Federal Claims always requires parties to seek leave and to show good cause if they wish to amend Infringement Contentions.[63]   The variety of procedures found in other districts suggests that it is not abnormal for courts to require the parties to seek leave to amend Infringement Contentions and to only permit such amendments for good cause.

Enviro Tech's best argument is that it should not be prevented from supplementing its contentions (or required to show good cause in order to do so) because it did not have notice of a time limit for supplementation.[64]   Rule 83(b) of the Federal Rules of Civil Procedure reads "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or local rules unless the alleged violator has been furnished in the

---

[60] Pl.'s Scope of J. Br. (Doc. 90) at 4–5.

[61] *PPC Broadband, Inc v. Perfect Vision Mfg., Inc.*, No. 4:22-cv-00204-DPM (E.D. Ark. Jan. 9, 2023), ECF No. 42 at 3; *Jager Pro Inc. v. Bull Creek Welding & Fabrication Inc.*, No. 4:19-cv-00107-DPM (E.D. Ark. Aug. 7, 2019), ECF No. 27 at 3; *Bad Boy Inc. v. Intimidator Inc., et al*, No. 1:17-cv-00070-DPM (E.D. Ark Jan. 25, 2018), ECF No. 26 at 3; *Bad Boy Inc. v. Spartan Mowers LLC et al*, No. 1:16-cv-00114-DPM (E.D. Ark. Feb. 14, 2017), ECF No. 27 at 2–3.

[62] E.D. Tex. Pat. R. 3-6.

[63] U.S. Ct. Fed. Claims Pat. R. 24.

[64] Pl.'s Scope of J. Br. (Doc. 90) at 5–6.

particular case with actual notice of the requirement."[65]   Although not cited by either party, *Massachusetts Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software* provides the application of this rule that is most favorable to Enviro Tech.[66]   So the Court considers it carefully.

In *Abacus Software*, the docket control order set a deadline to assert "preliminary infringement contentions."[67]   The plaintiff timely filed its preliminary infringement contentions.[68] After the issuance of the court's claim construction order, the court amended the docket control order and extended the deadline to amend infringement contentions.[69]   In an order accompanying the amended docket control order, the district court noted for the first time that preliminary contentions are deemed final and can only be amended for good cause.[70]   Nonetheless, the plaintiff attempted to amend its infringement contentions without showing good cause.[71]   Because the plaintiff failed to show good cause, the district court excluded the amended portions of the infringement contentions.[72]   The Federal Circuit reversed.   Applying Rule 83(b), the Federal Circuit held that the plaintiff did not have actual notice that good cause would be required to amend its preliminary infringement contentions.[73]   Because the district court did not state at the outset that amendments to the preliminary infringement contentions would be governed by the good

---

[65] Fed. R. Civ. P. 83(b).

[66] 462 F.3d 1344, 1357–59 (Fed. Cir. 2006).

[67] *Id.* at 1357.

[68] *Id.* at 1358.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at 1359.

cause standard, the district court could not impose any "sanction or other disadvantage" for failing to follow the standard.[74]

Our case is distinguishable in an important respect.  Unlike in *Abacus Software*, the Scheduling Order here does not describe the Infringement Contentions as "preliminary."[75] Instead, the First Amended Scheduling Order describes them simply as "Infringement Contentions."[76]  In *Abacus Software*, because the contentions were described as preliminary, it would have been reasonable for the parties to assume that they would later have an opportunity to amend the infringement contentions without needing to show good cause.[77]  Because of this, the plaintiff there may have chosen to exclude from its preliminary contentions viable claims for any multitude of reasons—on the premise that it would be able to add those contentions later.  The Scheduling Order in our case was different.   It did not refer to "preliminary" contentions.   Rather, it simply set one Infringement Contentions deadline.[78]  And it did not suggest the ability to supplement.   It required Enviro Tech to disclose "[e]ach patent claim that is allegedly infringed by each opposing party[.]"[79]  Neither the text nor structure of the Scheduling Order suggests that the parties would be able to supplement Infringement Contentions without first seeking leave to do so and showing good cause.

Enviro Tech calls attention to the fact that it "reserve[d] the right to amend and/or supplement these Infringement Contentions as it learns additional information through discovery

---

[74] *See id.*

[75] *See* First Am. Scheduling Order (Doc. 33) at 1–2.

[76] *Id.*

[77] *See* 462 F.3d at 1359.

[78] First Am. Scheduling Order (Doc. 33) at 1–2.

[79] *Id.* at 1.

in this matter."[80]   Similarly, in the Invalidity Contentions, Safe Foods "reserve[d] the right to supplement, amend, and/or alter the positions taken and information disclosed in these Invalidity Contentions . . . to take into account information or defenses that may come to light as a result of Safe Foods'[s] efforts, including its discovery efforts." [81]   Enviro Tech asserts that these reservations indicate that neither party intended for their contentions to be final.[82]   But that is not what these reservations indicate.   Rather, they suggest that the parties reserved the right to amend their contentions if discovery later supported the assertion of a new infringement or invalidity contention.   Such a revelation in discovery could (depending on the circumstances) give the parties good cause to amend their contentions.[83]   In short, the reservations are best understood as to indicate the parties' intentions to amend their contentions should they have good cause to do so.

Enviro Tech had actual notice (through the First Amended Scheduling Order) that the deadline to file and serve Infringement Contentions was November 15, 2021.   It was aware that the Scheduling Order made no mention of future amendments to the Infringement Contentions. These two facts together are sufficient to give Enviro Tech actual notice that it would need to seek leave and show good cause if it wanted to supplement its Infringement Contentions.[84]

---

[80]  Infringement Contentions (Doc. 35) at 2; Pl.'s Scope of J. Br. (Doc. 90) at 6.

[81]  Ex. D (Invalidity Contentions) to Pl.'s Scope of J. Br. (Doc. 90) at 4.

[82]  Pl.'s Scope of J. Br. (Doc. 90) at 6–9.

[83]  *See Roberts v.* Berry, No. 4:20-CV-00216-KGB, 2022 WL 526413, at *4 (E.D. Ark. Feb. 22, 2022) (finding good cause to amend when the moving party sought leave to amend mere weeks after discovering new evidence).

[84]  While the Court would reach the same conclusion, the need to seek leave and show good cause might in theory be a more difficult question if the challenged supplementation had occurred some time reasonably in advance of the Claim Construction hearing.   In addition to what the Court has already said above, it should be obvious from the Scheduling Order that the whole point of solidifying the Infringement Contentions is as a prelude to the Claim Construction Hearing.   So no reasonable party could think that the Scheduling Order implicitly allows supplementation of Infringement Contentions after that point—at least without good reason to explain the delay.

**B.  *Enviro Tech Has Failed to Show Good Cause to Amend the Infringement Contentions***

The second question to address is whether Enviro Tech has shown good cause to amend its Infringement Contentions.  Enviro Tech has not done so.  "If a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule."[85]  A scheduling order "may be modified only for good cause[.]"[86]  "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."[87] "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [courts] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines."[88]

Enviro Tech asserts it has good cause because (1) the contention deadline was November 15, 2021, and (2) before January 28, 2022, Enviro Tech did not have sufficient evidence to support a contention that Safe Foods was violating Patent claims 4, 13, 29, 25, and 30.[89]  Recall that, on January 28, 2022, Safe Foods produced to Enviro Tech documents that suggested that one of Safe Foods's customers was using peracetic acid in concentrations that would infringe on the excluded claims.[90]  After receiving this information, Enviro Tech then waited nearly a year before serving amended Infringement Contentions on Safe Foods.[91]  Enviro Tech asserts this was because Enviro Tech  was waiting for Safe Foods to produce information about whether Safe Foods's nine other

---

[85] *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).

[86] Fed. R. Civ. P. 16(b)(4).

[87] *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quotation marks and citation omitted).

[88] *Id.* at 717.

[89] Pl.'s Scope of J. Br. (Doc. 90) at 11.

[90] *Id.* at 3.

[91] *See* Def.'s Scope of J. Br. (Doc. 91) at 4; Ex. 5 (Suppl. Infringement Contentions) to Def.'s Scope of J. Br. (Doc. 91-5).

customers were using peracetic acid in concentrations covered by the excluded claims.[92] Although Safe Foods never produced this information, Enviro Tech eventually chose—it says out of an abundance of caution—to serve amended Infringement Contentions on December 28, 2022, a little less than two weeks after the issuance of the Claim Construction Order.[93]

When determining the presence or absence of good cause, the north star is "diligence."[94] The problem for Enviro Tech is that the evidence upon which it bases its supplemental Infringement Contentions was produced nearly a year before Enviro Tech served its supplemental Infringement Contentions.   If Enviro Tech would have sought leave to supplement the Infringement Contentions shortly after receiving such information, it would have had good cause. Waiting on further answers from Safe Foods—so that Enviro Tech wouldn't need to serve supplemental Infringement Contentions piecemeal—may have justified a further brief delay.   But not an eleven-month delay.

The patent litigation process consists of two steps.[95]  "[T]he first step is determining the meaning and scope of the patent claims asserted to be infringed.   The second step is comparing the properly construed claims to the device accused of infringing."[96]   The first step is commonly known as claim construction or the *Markman* process.[97]   One of the purposes of a claim construction hearing is "to narrow the issues presented, thereby saving time and money[.]"[98]   In

---

[92] Pl.'s Scope of J. Br. (Doc. 90) at 3, 11.

[93] *Id.* at 11.

[94] *See Sherman*, 532 F.3d at 716.

[95] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

[96] *Id.* (citations omitted).

[97] *See id.*

[98] *Intervet, Inc. v, Merial Ltd.*, 252 F.R.D. 47, 50 (D.D.C. 2008).

order to meet this purpose, it is imperative that the Infringement Contentions are complete and comprehensive.   If not, the Court may have to go through the claim construction process multiple times, wasting everyone's time and money.   Enviro Tech had two months after receiving the January 28, 2022 productions before it had to submit its opening Claim Construction Brief.[99]   But nowhere in its claim construction briefing did Enviro Tech ever suggest that it planned to add claims 4, 13, 20, 25, and 30.[100]   Enviro Tech had over eight months before the Claim Construction hearing.[101]   And it had over ten months before the Claim Construction Order was issued.[102]   But at no point did Enviro Tech do the prudent thing and amend its Infringement Contentions so as to avoid needing to go through multiple claim construction processes.[103]   Nor did Enviro Tech even hint to the Court that it might do so in the future.

The Court can appreciate that Enviro Tech did not want to waste the Court's time by filing piecemeal infringement contentions.   But that rationale only goes so far until it butts up against a lack of diligence.   And we are well on the lack of diligence side of the spectrum.   Enviro Tech's lack of diligence precludes the Court from finding that Enviro Tech had good cause to supplement its Infringement Contentions.

---

[99] *See* First Am. Scheduling Order (Doc. 33) at 3.

[100] *See generally* Pl.'s Claim Construction Br. (Doc. 40); Pl.'s Resp. to Def.'s Claim Construction Br. (Doc. 46). Compare that to Safe Foods.   Although it did not allege that the term "about" was indefinite in the Invalidity Contentions, Safe Foods did allege that "about" was indefinite in its Claim Construction Brief.   *See* Ex. D (Def.'s Invalidity Contentions) to Pl.'s Scope of J. Br. (Doc 90); Def.'s Claim Construction Br. (Doc. 41) at 24–55.   And Enviro Tech did not timely object to Safe Foods's invalidity argument concerning the word "about" on the ground that the argument was absent from Safe Foods's Invalidity Contentions.

[101] Claim Construction Hr'g (Doc. 70).

[102] Claim Construction Order (Doc. 82).

[103] As noted *supra*, it does not matter whether the Court would need to go through another claim construction process (that goes to whether Enviro Tech's delay caused prejudice).   Rather, the lack of good cause alone is sufficient grounds to deny Enviro Tech's Motion for Leave.   *See* case cited *supra* note 88.

**CONCLUSION**

Both parties agree that a Final Judgment should be entered in favor of Safe Foods with respect to Patent claims 1–3, 5–12, 14–19, 21–24, 26–29, and 31–33.[104]   Those Patent claims were the only ones challenged in Enviro Tech's Infringement Contentions.   Because the Court's Claim Construction Order concluded that "about" and "antimicrobial amount," as used in the Patent, were indefinite, all Patent claims challenged in Enviro Tech's Infringement Contentions are indefinite and thus invalid.[105]   Therefore, Judgment in favor of Safe Foods with respect to the foregoing Patent claims is proper and will be entered.

As explained above, the Court DENIES Enviro Tech's Motion for Leave to File Supplemental Infringement Contentions.   Because Patent claims 4, 13, 20, 25, and 30 were not part of Enviro Tech's Infringement Contentions, they are not at issue in this case.[106]

IT IS SO ORDERED this 25th day of June 2024.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[104] *See* Def.'s Submission Regarding Case Disposition (Doc. 83) at 1; Pl.'s Status Update (Doc. 84).

[105] *See* Claim Construction Order (Doc. 82) at 22–32.   For sake of brevity, the Court incorporates and adopts its discussion in the Claim Construction Order regarding indefinite terms here.   *Id.   See also ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1349 (Fed. Cir. 2022) ("Failure to meet [the definiteness] standard renders a claim invalid as indefinite.").

[106] To the extent those five Patent claims can be thought of as "at issue" in this case, they were not timely challenged by Enviro Tech in the Infringement Contentions.   Accordingly, Safe Foods would be entitled to judgment in its favor with respect to any legal claim asserted by Enviro Tech concerning them.